UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

YELA FIDUCIARY SERVICES, LLC,
personal representative for the Estate of
Alyssa Marie Sund, Deceased; and EMERY
SUND, an individual,

                         Plaintiffs,

vs.

BENTON COUNTY, an Oregon county; LANCE
LOBERG, M.D., an individual; JON SOBOTKA,
M.D., an individual; NICOLE KELLEY, an
Individual; SCOTT JACKSON, an individual;
DIANA RABAGO, an individual; EVAN MOHR,
an individual; MELISSA WERDELL, an individual;
MATTHEW BLACKSHEAR, an individual; CALLIE
DUGGAR, an individual; ETHAN GARRISON, an
Individual; JONATHAN HERRICK, an individual;
DOREE JOHNSON, an individual; PAUL
LANCASTER, an individual; NICHOLAS MILLER,
An individual; TANNER SPARKS, an individual;
THOMAS WHITE, an individual; and JOHN DOES
1-9,

                         Defendants

_____

Case No. 6:20-cv-01925-MK
**OPINION AND
ORDER**

**KASUBHAI,** United States Magistrate Judge:

Plaintiffs, the personal representative for the Estate of Alyssa Sund and her husband,[1] filed this civil rights lawsuit under 42 U.S.C. § 1983 and Oregon state law. Compl. 34–40, ECF No. 1. Defendants include Benton County, and several individually named parties: Lance Loberg, Jon Sobotka, Nicole Kelley, Scott Jackson, Diana Rabago, Evan Mohr, Melissa, Werdell, Matthew Blackshear, Callie Duggar, Ethan Garrison, Jonathan Herrick, Doree Johnson, Paul Lancaster, Nicholas Miller, Tanner Sparks, Thomas White, and nine John Does. *Id.* at 3–5. Plaintiffs move for sanctions asserting that Defendants failed to preserve evidence after litigation was reasonably foreseeable. Pl.'s Mot. for Sanctions 2, ECF No. 91 ("Pl's Mot."). Plaintiffs argue that Defendants failed to preserve electronically stored information ("ESI"), which resided on several cell phones.[2] For the reasons below, Plaintiffs' motion for sanctions is GRANTED.

## BACKGROUND

On December 19, 2018, Sund and her husband were booked into Benton County Jail. Compl. ¶ 1, ECF No. 1. While in custody, Sund had several health complications, including heroin withdrawal, an asthma attack, and days-long serial vomiting that lasted throughout her detention. *Id.* On the fourth day in custody, deputies found Sund dead in her jail cell. *Id.* Soon after, a criminal inquiry was initiated and notice of potential litigation was provided. Willes's Decl. Ex. 1, 13; Ex. 5, 1; Ex. 7, 1, ECF No. 91.

---

[1] Yela Fiduciary Services, LLC, is Sund's personal representative.

[2] Although Plaintiffs argue that "Defendants" disregarded their duty to preserve evidence, Plaintiffs only provided evidence that some of the named defendants either spoiled evidence or could be held accountable for that spoiled evidence. The Court construes Plaintiffs' argument against "Defendants" to mean those defendants for which Plaintiffs provided evidence. Accordingly, the Court limits discussion of the defendants for which Plaintiff provided no evidence of spoilation, unless otherwise relevant.

I.    **Criminal Inquiry**

In June 2019, a Benton County judge requested Oregon's Attorney General to initiate "an independent review of the investigation into the death of [Sund] while she was in custody at the Benton County Jail." *Id.* at Ex. 7, 1. In November 2019, the Oregon Department of Justice ("DOJ") provided a final report ("DOJ's final report") relating to Sund's death. *Id.*

The DOJ's final report relied on "police reports, photographs, videos, toxicology reports, and the State Medical Examiner's Report." *Id.* The DOJ also spoke to "the investigating officer, the medical examiner, and the forensic scientist that conducted the toxicology report." After the DOJ's investigation, it concluded "that the evidence d[id] not support a criminal prosecution." *Id.* at 3.

II.    **Preservation Efforts and Depositions**

A.    **Preservation Efforts**

On December 27, four days after Sund was found dead in her jail cell, Plaintiffs sent a letter regarding "Preservation of Evidence" relating to Sund and her husband ("the December 27 letter"). *Id.* at Ex. 5, 1. The December 27 letter informed Benton County, as well as four individuals—two of which are named defendants—Jackson, Rabago, Lattanzio, and Augerot ("the December 27 letter recipients"), that Plaintiffs were "considering filing a lawsuit against Benton County and various officials relating to Alyssa Sund's death while she was in custody." *Id.* at 1–2. The "[p]otential claims [that were named] include, without limitation, federal and state civil rights violations, wrongful death, gross negligence, negligence, and other claims that an investigation and discovery may reveal as appropriate." *Id.* at 1. Plaintiffs also informed the December 27 letter recipients that a "litigation hold" was necessary and that they:

must preserve all records of any kind within your possession, custody or control relating to any and all inmates at the Benton County Jail from December 19–December 23, 2018.

[the December 27 letter recipients] must instruct all employees, agents or contractors not to destroy or alter any records in their possession, custody or control relating in any way to [Sund or her husband] or to medical care within the Benton County Jail. This request specifically includes, without limitation, notifying employees and contractors that they must take all steps to secure and preserve such records, including personal text messages and emails.

\*\*\*

Electronically stored data will likely become an important and irreplaceable source of discovery or evidence in this matter. [the December 27 letter recipients] must suspend any deletion, overwriting, or any other possible destruction of such electronic evidence.

*Id*. at 2.

Approximately a month later, another letter was sent addressed to Jackson and Rabago. That letter, like the December 27 letter, informed the recipients that litigation was being considered and that they must preserve relevant "records," which included ESI. *Id.* at Ex. 6, 1.

In November 2020, Plaintiffs filed their Complaint initiating the underlying action to this motion. Compl., ECF No. 1. In February 2021, Plaintiffs demanded "[a]ll Documents reflecting Communications related to [Sund] from December 19, 2018, to Present." *Id.* at Ex. 8, 7. Defendants did not produce any text messages as a part of Plaintiffs' discovery request.

In July 2021, Plaintiffs requested that Defendants specifically produce text messages from Defendants' phones. *Id.* at Ex. 13, 1–2. Defendants did not provide text messages and in later depositions, four individually named defendants—Kelley, Duggar, Garrison, and Werdell—admitted that they no longer had text messages from the relevant time frame, and that no one ever told them to maintain those messages. *Id.* at Ex. 2, 2; Ex. 4, 3–4; Ex. 11, 3–4; Ex. 12, 2–3.

### B.    Depositions

During depositions, the parties reported differing timelines regarding the destruction of

ESI on their cell phones. Kelley, who was deposed in July 2021, testified that her "husband

wiped [the phone] clean and [that she] donated [it] somewhere" in December 2019. *Id.* at Ex. 11,

3–4. She also testified that she was not asked to preserve the data on her phone until a few

months prior to the depositions. *Id.*

Dugger testified that she "switched phones a couple of times." Specifically, that she had

"traded . . .in" the phone that she had when Sund was in Benton County Jail. Duggar also

testified that the county never "told [her] to hang on to those text messages," and that she no

longer had access to those messages. *Id.* at Ex. 12, 3. Similarly, Garrison and Werdell no longer

had access to the texts that Plaintiffs seek. They testified that the county did not instruct them to

maintain messages relevant to Sund. *Id.* at Ex. 3, 2; Ex. 4, 4.

### STANDARD OF REVIEW

## I.    Spoliation

A court's authority to sanction a party that has failed to preserve evidence is derived from

two sources: "the inherent power of federal courts to levy sanctions in response to abusive

litigation practices, and the availability of sanctions under Rule 37 against a party who fails to

obey an order to provide or permit discovery." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th

Cir. 2006) (citation and internal quotations omitted).

The "'Ninth Circuit has . . . not set forth a precise standard for determining when

[spoliation] sanctions are appropriate,' but the majority of trial courts have adopted the following

test: (1) 'the party having control over the evidence had an obligation to preserve it at the time it

was destroyed'; (2) 'the records were destroyed with a culpable state of mind'; and (3) 'the

evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Justice v. Rockwell Collins, Inc.*, 117 F. Supp. 3d 1119, 1130–31 (D. Or. 2015), *aff'd*, 2017 WL 6559788 (9th Cir. 2017) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 985 (N.D. Cal. 2012)); *see also UMG Recordings, Inc. v. Hummer Winblad Venture Partners*, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006) ("*In re Napster*") (applying the same standard to a party seeking an adverse inference instruction).

The party seeking spoliation sanctions bears the burden of establishing each element. *Justice*, 117 F. Supp. 3d at 1131. "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959 (quoting *United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir. 2002) (emphasis in original). The party seeking spoliation sanctions bears the burden of establishing each element. *Id.*

Ultimately, the imposition of spoliation sanctions must be determined case-by-case and should be commensurate to the spoliating party's level of culpability, motive, or degree of fault in destroying the evidence. *See, e.g.*, *Erlandson v. Ford Motor Co.*, No. 08-cv-1137-BR, 2009 WL 3672898, at *3 (D. Or. Oct. 30, 2009) (finding dismissal sanction appropriate); *In re Napster*, 462 F. Supp. 2d at 1078 (finding preclusion order and adverse inference instruction warranted); *BTO Logging Inc. v. Deere & Co.*, 174 F.R.D. 690, 692–93 (D. Or. 1997) (excluding expert testimony); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (imposing adverse inference instruction).

## II.    Electronically Stored Information

Under Fed. R. Civ. P. 37(e), a court may impose sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost

because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." If such loss of information results in prejudice to another party, the court may "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Alternatively, if the court finds that a party "acted with the intent to deprive another party of the information's use in the litigation," the court may: "(A) presume the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

## DISCUSSION

Plaintiffs assert that remedial sanctions are proper under this Court's inherent authority as well as under Fed. Rule Civ. Pro. 37(e). Defendants respond that Plaintiffs failed to meet their burden in establishing, first, that Defendants had a duty to preserve the destroyed evidence. Second, that Plaintiffs were prejudiced by the destruction of the text messages. And third, that Defendants had the required culpable mental state. Kelley's Response to Pl's Mot. for Sanctions 5–10, ECF No. 100 ("Kelley's Resp."); Benton County's Response to Pl.'s Mot. for Sanctions 5–7, ECF No. 102 ("County's Resp."). Defendants' arguments are addressed in turn.

## I.    Duty to Preserve

Plaintiffs argue that Defendants had a duty to preserve ESI because Plaintiffs put Defendants on notice of the potential for litigation when Plaintiffs sent the December 27 letter. Plaintiffs also argue that if the December 27 letter did not place Defendants on notice, the death of Sund, the investigation of Sund's death, and the criminal inquiry performed by the DOJ should have been sufficient.

### A.      Legal Standard

Courts in the Ninth Circuit generally agree that "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence that [the spoiling party] knows or reasonably should know is relevant to the action." *Gaina v. Northridge Hosp. Med. Center*, 2019 WL 1751825 *4 (C.D. Cal. 2019); *see also BIC Corp.*, 6 F.3d at 1329 ("[S]imple notice of potential relevance to the litigation" is often sufficient to establish a duty to preserve information.); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (concluding that a duty to preserve information arises when the party has "some notice that the documents are potentially relevant")."[T]he duty to preserve is triggered not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Aramark Management, LLC v. Borquist*, 2021 WL 864067, at *3 (C.D. Cal. 2021).

In determining whether a defendant "*actually* anticipated litigation," a court might consider evidence such as "emails or meeting minutes discussing potential litigation, actions taken to retain a lawyer, or a company budget that allocates funds for potential litigation." *Id*. at 4. A plaintiff may also send a preservation letter to inform a party of the potential of a future litigation. *Id*.

When a defendant "*should have reasonably* anticipated litigation involves applying 'a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.'" *Id*. (quoting *Micron Tech., Inc v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)). It "is informed by a number of policy considerations, including 'the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth.'" *Hynix Semiconductor Inc.v.*

*Rambus Inc.*, 645 F.3d 1336, 1345 (Fed. Cir. 2011) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) and *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)). That consideration must be balanced with "the legitimate business interest of eliminating unnecessary documents and data." *Id.* A court should also "be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts." Rule 37(e) advisory committee note to 2015 amendment.

A party has an "obligation to identify, locate, and maintain, information that is relevant to specific, predictable, and identifiable litigation." *Apple Inc.*, 881 F.Supp. 2d at 1137 (internal quotation marks omitted). The Rule only requires "reasonable steps to preserve." Fed. R. Civ. Pro 37(e). The moving party has the burden "to affirmatively prove" that the evidence "should have been preserved in anticipation of litigation. *See Anderson v. Armour*, No. 20-17284, 2021 WL 5985014, at *1 (9th Cir. 2021) (stating that the moving party "failed to carry her burden to affirmatively prove that the [evidence] should have been preserved in anticipation of litigation.").

With Defendants arguments in mind and the legal standard which only requires "reasonable steps to preserve," this Court addresses which individual defendants had a duty to preserve the destroyed ESI. *See* Rule 37(e) advisory committee note to 2015 amendment ("Courts should consider the extent to which *a party* was on notice that litigation was likely[.]") (Emphasis added.)

### B.    Analysis

#### 1.    Werdell, Garrison, Duggar, and Kelley

Defendants argue that Plaintiffs failed to meet their burden establishing that Werdell, Garrison, Duggar, and Kelley knew or reasonably should have known "of any claim or, any obligation to preserve text messages." County's Resp. 6, ECF No. 102. Plaintiffs respond that

the Preservation Letter, Sund's death, Linn County's death investigation, and the Attorney

General's criminal inquiry should have put Werdell, Garrison, Duggar, and Kelley on notice to

preserve their phones and the contents of those phones. The Court agrees.

As previously noted, a court should "be sensitive to the party's sophistication with regard

to litigation in evaluating preservation efforts." Rule 37(e) advisory committee note to 2015

amendment; *see also Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 344 (D. Ariz. 2022)

(reiterating Rule 37(e)'s advisory committee's note to the 2015 amendment). A claim of

ignorance of the preservation obligation for sophisticated parties is less persuasive. *See Colonies*

*Partners, L.P. v. Cnty. of San Bernadino*, 2020 WL 1496444 at * 8 (C.D. Cal. 2020) ("Ignorance

of [the preservation obligation,] especially from sophisticated parties who have the assistance of

experienced counsel, is not persuasive[.]"). Sophistication is not limited to legal sophistication

and is determined in light of the facts of the case. *See Fast*, 340 F.R.D. at 344 (concluding that

the plaintiff was sophisticated for the purposes of spoilation under Rule 37(e) because she was

"tech savvy").

Werdell, Garrison, Duggar, and Kelley are sophisticated professionals. Their professional

sophistication extends to a heightened obligation to preserve records related to the performance

of their duties. Werdell, Garrison, and Duggar are jail deputies and Kelley is a nurse for the jail.

Parties that work at a jail, as a part of their job, necessarily understand the requirements to

preserve evidence. Their work includes collecting evidence and maintaining records of jail

inmates, and as relevant here, documenting health issues to not only aid in an inmate's treatment,

but also for keeping records for future investigations.  Additionally, the Defendants reasonably

should have knowledge of the potential of civil rights claims. Although it is not to be expected

that everyone who works in a jail will know the full extent of liability that may arise, an inmate's

death is a significant event such that the defendants should understand that an investigation and pre-trial litigation may follow. The Court concludes that Werdell, Garrison, Duggar, and Kelley are sophisticated parties and their obligation to preserve documents extends to that which they reasonably should have known—a civil rights claim may likely follow.

Along with their professional sophistication, they were also personally aware of or reasonably should have known that (1) Sund died in the care of the County, (2) an investigation into Sund's death was performed, and (3) an inquiry into whether Sund's death was a result of criminal behavior on behalf of the jail occurred. Werdell, Garrison, Duggar, and Kelley were informed of Sund's death the morning after her body was discovered. The death investigation began that same day. Duggar and Kelley were personally investigated as a part of that investigation and Werdell and Garrison either knew or should have known of the investigation. Provided the sophistication and the knowledge of several of the events, Werdell, Garrison, Duggar, and Kelley, at minimum, should have reasonably known of the potential for litigation.

        2.    <u>Benton County, Jackson, and Rabago</u>

Benton County, Jackson, and Rabago received notice four days after Sund's death of the potential litigation. Moreover, the December 27 letter informed them that they were required to inform employees, agents, and contractors of the necessity to preserve evidence relevant here. *See Apple Inc.*, 881 F. Supp. 2d at 1137 (concluding that a party has an "obligation to identify, locate, and maintain, information that is relevant to specific, predictable, and identifiable litigation"); *see also, First Fin. Sec., Inc. v. Freedom Equity Group LLC*, 2016 WL 5870218, at *3 (N.D. Cal. 2016) (imposing adverse inference and monetary sanctions against defendant employer that failed to take reasonable steps to preserve employees' text messages); *Oppenheimer v. Cty. of La Habra*, 2017 WL 1807596, at *7, *10–13 (C.D. Cal. 2017) (imposing

adverse inference sanction against city where city employee deleted ESI after litigation had commenced). Here, those employees, agents, and contractors include Werdell, Garrison, Duggar, and Kelley. Thus, Benton County, Jackson, and Rabago had a duty to inform Werdell, Garrison, Duggar, and Kelley of their duty to preserve evidence.

## II.    Federal Rule of Civil Procedure 37(e)(2)

### A.    Prejudice

"When a party fail[s] to take reasonable steps to preserve electronically stored information that should have been preserved in the anticipation of litigation, and the information is lost as a result," "Rule 37(e) directs that the initial focus should be on whether the lost information can be restored or replaced through additional discovery." Rule 37(e) advisory committee note to 2015 amendment. Accordingly, the Court addresses whether Plaintiffs were prejudiced by the destruction of ESI next.

Plaintiffs argue that they were prejudiced by the loss of text messages between Kelley and other Benton County employees because Plaintiffs lost the ability to completely investigate how Kelley handled Sund's healthcare, how Kelley handled the healthcare needs of other persons needing care at the jail, and the practices and policies of Kelley's nursing in the jail and how those practices and policies may have affected people who were similarly situated as Sund. Defendants respond that the evidence that Plaintiffs seek is (1) not relevant, (2) not discoverable under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") , or (3) included elsewhere in the record.

1.      Scope of Plaintiffs' Request

a)      Relevance

Defendants argue that Plaintiffs failed to identify how the "text messages regarding the provision of medical services generally" have "impaired [Plaintiffs'] ability to go to trial or threatened to interfere with the rightful decision of the case." County's Resp. 7–8 ECF No. 102. The deletion of irrelevant evidence does not support a claim of spoliation. *Reinsdorf v. Skechers USA Inc.*, 264 F.R.D. 604, 631 (C.D. Cal. 2013) However, because "the relevance of destroyed documents cannot be clearly ascertained[,] because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents." *Leon*, 464 F.3d at 959 (quoting *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982)) (internal quotations and bracketing omitted).

Kelley testified that "if she is not at the jail, deputies will either call or text her." Willes's Decl. Ex. 1, 8, ECF No. 91. Kelley was the only nurse working at Benton County and only worked Monday through Friday. *Id.* at Ex. 11, 5. Plaintiffs' case relies heavily on the medical care that Kelley provided, and when she was unavailable the care the jail deputies provided in her absence. Also relevant, are the practices and procedures of the Benton County jail, which as Kelley testified during her deposition, are recorded through her texts with jail deputies. Therefore, to the extent that Plaintiffs cannot discover relevant evidence through other means, the destruction of the ESI prejudiced Plaintiffs.

b)      HIPAA

Defendants next argue that the evidence, which "pertained to the provision of medical care in the jail," would not be discoverable because those texts about other inmates who received medical care would "necessarily contain medical information about [those] inmates," which are

protected medical records under HIPAA. Defendants further assert that "[w]ithout consent or a court order, Plaintiffs would not be entitled to HIPAA protected medical records.

HIPAA is not an absolute bar to disclosure. *See* 45 C.F.R. § 164.512 (providing several bases for disclosure). As relevant here, 45 C.F.R. § 164.512(e) permits the disclosure of "protected health information"[3] for judicial and administrative proceedings under several circumstances. Defendants' failure to maintain what they now assert as protected health records, prevents the Court from independently determining whether the ESI might be otherwise discoverable and deprives Plaintiffs of their right to fully evaluate evidence related to their case. Defendants' arguments amount to the proposition their conduct amounts to "no harm no foul" in that because the records relating to other inmates are simply not relevant and otherwise not discoverable because of HIPAA, they committed no "foul". Defendants miss the mark. The spoliation of evidence is itself the "foul". The Defendants do not get to decide what evidence is discoverable when they are responsible for its spoliation. This Court determines what is discoverable. The Defendants routed the Court's authority when they failed to preserve those records.

---

[3] Protected health information, as defined in 45 C.F.R. § 160.103, means:
> individually identifiable health information:
> (1) Except as provided in paragraph (2) of this definition, that is:
> (i) Transmitted by electronic media;
> (ii) Maintained in electronic media; or
> (iii) Transmitted or maintained in any other form or medium.
> (2) Protected health information excludes individually identifiable health information:
> (i) In education records covered by the Family Educational Rights and Privacy Act, as amended, 20 U.S.C. 1232g;
> (ii) In records described at 20 U.S.C. 1232g(a)(4)(B)(iv);
> (iii) In employment records held by a covered entity in its role as employer; and
> (iv) Regarding a person who has been deceased for more than 50 years.

c)    Discoverable Elsewhere

Finally, Defendants assert that Plaintiffs are not prejudiced by the destruction of the text messages because the requested evidence was provided elsewhere. However, Kelley's deposition disproves that contention. During Kelley's deposition she testified that she only remembers that Sund wanted "the higher dose of ibuprofen." In that deposition, Kelley was asked if she "recall[ed] anything at all about what the text message said" between Kelley and Duggar. Kelley stated that she does "[n]ot specifically" remember. The Ninth Circuit has found prejudice "when a party's refusal to provide certain documents forced [the non-spoiling party] to rely on incomplete and spotty evidence at trial." *Leon*, 464 F.3d at 959 (citation and internal quotations omitted). Kelley's lapse in memory of the facts surrounding Sund's healthcare and death demonstrate incomplete evidence that is not discoverable elsewhere.

Moreover, the single text between Kelley and Duggar does not fully encompass the extent of the evidence that would be reasonably foreseeable to preserve. Rather, as Plaintiffs assert, the content of the text messages, their frequency, times of day, or dates of the messages that related to Sund should have been preserved and was not encompassed in Kelley's deposition. Kelley's testimony, along with the evidence Plaintiffs seek, demonstrates that the testimony and medical records are spotty and incomplete.

Benton County and several individually named defendants had a duty to preserve the ESI. Plaintiffs were prejudiced. The Court grants Plaintiff's motion for sanctions under Fed. R. Civ. P. 37(e)(1).

## III.    Sanctions Under 37(e)(2)

Plaintiffs also request sanctions under Rule 37(e)(2). Under Rule 37(e), two categories of sanctions exist. First, where a district court finds, as this Court finds, that the loss of ESI has

prejudiced the moving party, a district court may order "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Second, where the district court finds that the offending party "acted with the intent to deprive another party of the information's use in the litigation," the district court may require greater sanctions, including, an adverse evidentiary presumption, a dismissal of the case, or a default judgment. Fed. R. Civ. P. 37(e)(2). For a party to prevail under Rule 37(e)(2), as opposed to Rule 37(e)(1), that party must show that the opposing party "acted with the intent to deprive another party of the information's use in the litigation."

### A.    Mental State

Plaintiffs argue that Rule 37(e)(2) sanctions are appropriate under the facts of the case. Specifically, Plaintiffs argue that when Werdell, Garrison, Duggar, and Kelley disposed of their phones and accompanying text messages, that they did it intentionally. Pl.'s Mot. 10, ECF No. 91. Defendants argue that more than intentionality is required and that the intent must specifically be done to deprive Plaintiffs the use of the ESI in litigation. County's Resp. 7, ECF No. 102; Kelley's Resp. 3–4, ECF No. 100. Defendants further argue that there is no evidence that the spoliation occurred with the intent to deprive Plaintiffs of the use of the ESI in litigation. The Court agrees.

#### 1.    <u>Intent</u>

Rule 37(e) does not define "intent." Courts have found that a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations. *See, e.g.*, *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL 5870218, *3 (N.D. Cal. 2016) (finding that the defendant's agents acted with intent in deleting text messages based on evidence of an "explicit

agreement to avoid communicating electronically," which "suggest[ed] a shared intent to keep

incriminating facts out of evidence"); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488,

501 (S.D.N.Y. 2016) (finding that the plaintiff's conduct was intentional under Rule 37(e)

because, absent "any other credible explanation for [plaintiff's alteration of] the email addresses,

it is more than reasonable to infer that the intention was to manipulate the digital information

specifically for purposes of this litigation"); *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp.

3.d 570, 582 (S.D.N.Y. 2017) (finding the plaintiff's conduct was intentional under Rule 37(e)

where the evidence showed that the plaintiff either purposefully deleted emails that showed she

might have fabricated the existence of a report that was critical to her lawsuit or purposefully

took no steps to preserve the emails). "'Negligent or even grossly negligent behavior' is not

enough to show intent." *Hovannisian v. United Nat'l Ins. Co.,* 2022 WL 88484, *2 (E.D. Cal.

2022) (quoting Rule 37(e) advisory committee note to 2015 amendment).

      Here, while the evidence may show that at least three of the four individually named

defendants destroyed the ESI intentionally, there is no evidence that anyone destroyed evidence

with the intent to deprive Plaintiffs of the use of that information in the litigation.

      Next, as to Benton County, Jackson, and Rabago there is also no evidence that they acted

with the intent to deprive Plaintiffs of the text messages. For example, there is no evidence that

Benton County, Jackson, or Rabago (through an agent or through themselves) disposed of the

evidence or told anyone to dispose of the evidence. Certainly, Benton County, Jackson, and

Rabago's actions were negligent and potentially grossly negligent, however, negligence or gross

negligence is insufficient to show that Benton County and Jackson acted with the intent to

deprive Plaintiffs of the text messages. Accordingly, the necessary threshold findings required to

impose sanctions under Rule 37(e)(2) have not been met.

**IV.    Sanction**

Concluding that the threshold findings are met to impose sanctions under Rule 37(e)(1), the Court must next determine the appropriate sanction. *See Winecup v. Gamble, Inc. v. Gordon Ranch LP*, 850 F. App'x 573, 574 (9th Cir. 2021) (stating such). In determining what sanctions are appropriate, courts may only "order measures no greater than necessary to cure the prejudice." Fed. Rule Civ. Pro 37(e)(1).

Plaintiffs argue that the appropriate sanctions under Rule 37(e)(1) are "[1] that the jury be informed that text messages relating to [Sund] were sent between Defendants, [2] that the jury be informed that Defendants wiped their phones or otherwise made their contents unavailable, and [3] that Defendants be prohibited from describing the putative contents of those text messages." Pl.'s Mot. 12. The Court agrees that Plaintiffs requested sanctions under Rule 37(e)(1) are appropriate.

## CONCLUSION

For the reasons above, Plaintiffs' motion for sanctions under Fed Rule Civ Pro 37(e)(1) (ECF No. 91) is GRANTED. Plaintiffs' motion for sanctions under Fed. Rule Civ. Pro. 37(e)(2) is DENIED.

DATED this <u>14th</u> day of December 2022.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge